# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATE MCLENAGHAN, ) ) | |
| PLAINTIFF, ) ) | Civil Action No._____ |
| v. ) ) | |
| BLATT, HASENMILLER, ) LEIBSKER & MOORE, LLC ) and DEPARTMENT STORES ) NATIONAL BANK, ) ) | |
| DEFENDANTS. ) | |

## COMPLAINT

Plaintiff, Kate McLenaghan, brings this action to secure redress from unlawful credit and collection practices engaged in by Defendant Blatt, Hasenmiller, Leibsker & Moore, LLC, and Department Stores National Bank. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2 et seq., against these Defendants.

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331, 1337, and 1367, as Defendants do business in the State of Illinois.

2. Venue in this District is proper because Defendants' collection demands were received here, and both Defendants transact business here.

## PARTIES

3. Plaintiff, Kate McLenaghan, ("Plaintiff"), is an individual and resident of

Cook County, Illinois, and a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

4. Defendant, Blatt, Hasenmiller, Leibsker, & Moore LLC ("Blatt") is a collection law firm headquartered in the City of Chicago, engaged as a "debt collector" as defined by and within the meaning of the FDCPA, § 1692a. Blatt is engaged in the business of collecting consumer debts in this State where it regularly collects or attempts to collect debts owed or due, or asserted to be owed or due another, and whose principal purpose is the collection of delinquent consumer debts using the mails and telephone.

5. Defendant, Department Stores National Bank ("DSNB") is a national bank engaged in the business of credit cards in this State.

### FACTS COMMON TO ALL COUNTS

6. At some time before May, 2010, Plaintiff incurred a credit card debt to Defendant DSNB under account # 43788897481 for personal, family and/or household purposes, and thus Plaintiff incurred a debt ("alleged debt") as that term is understood under § 1692a(5).

7. On or around May 27, 2010, Defendant Blatt sent a first collection letter to Plaintiff stating in part that Plaintiff is indebted to DSNB in the amount of $1836.97 for a Macy's account associated with account # 43788897481. (Exhibit A, Letter from Blatt dated May 27, 2010).

8. On or around June 2, 2010, Plaintiff sent Blatt a letter stating that she disputes owing the alleged debt, and said letter also requested that Blatt provide verification of the alleged debt pursuant to §1692g of the FDCPA. (Exhibit B, Letter from Plaintiff to Blatt dated June 2, 2010).

9. On or around July 16, 2010 Blatt sent Plaintiff a one-page document which Blatt purported to be a verification of the alleged debt. (Exhibit C, Letter from Blatt dated July 16, 2010). Although Plaintiff requested that Blatt identify the original creditor in her June 2, 2010 letter to Blatt, the portion of the July 16, 2010 letter sent by Blatt that reads "Original Creditor Information" is blank.

10. On or around August 4, 2010, Plaintiff sent a letter to Blatt stating in part that Blatt's July 16, 2010 letter to Plaintiff did not contain all of the information required by § 1692g of the FDCPA, as it did not contain the name of original creditor to whom the debt is owed. (Exhibit D, Letter from Plaintiff to Blatt dated August 4, 2010).

11. Despite not having properly verified the alleged debt, on August 30, 2010 Blatt filed a Complaint against the Plaintiff in the Circuit Court of Cook County under Case # 10M1 181084 ("collection action"), to collect the alleged debt. (Exhibit E, Complaint).

12. On or around October 11, 2010, Plaintiff placed a telephone call to Blatt to attempt to settle the alleged debt, and was connected to an employee or agent of Blatt who identified himself as "Otis". Although Plaintiff attempted to work out a settlement of the alleged debt during the pendency of the conversation with Otis, a resolution was not reached between Blatt and Plaintiff because Otis would not agree to put the agreed-upon terms in writing.

13. Although an agreement to settle the alleged debt was not reached on October 11, 2010, Plaintiff did provide her PNC Bank checking account information ("bank information") to Otis, per his request during the pendency of the October 11, 2010

conversation, "to set her up" for any future settlement agreement involving the alleged debt.

14. At the end of the October 11, 2010 conversation between Otis and Plaintiff, per Plaintiff's request Otis agreed to delete the banking information that Plaintiff had provided during the pendency of said conversation.

15. On October 25, 2010, Plaintiff's attorney Mario Kasalo contacted Blatt attorney Iryna Martinyv, an attorney working on the collection action, for the purpose of settling the alleged debt. During the pendency of the conversation, the counsel for both parties agreed to continue the status hearing that was scheduled on October 26, 2010, and Plaintiff's attorney conveyed a settlement offer of $1000.00 to settle the alleged debt in full, which attorney Martinyv agreed to take back to her client for consideration. (Exhibit F, Emails dated October 25, 2010 between Mario Kasalo and Iryna Martyniv).

16. Curiously, on or around October 25, 2010 Blatt sent Plaintiff a letter stating that $881.00 was scheduled to be withdrawn by Blatt, from Plaintiff's checking account, on October 30, 2010. Said letter was received by the Plaintiff on October 26, 2010. (Exhibit G, Letter from Blatt to Plaintiff dated October 25, 2010).

17. Plaintiff did not, at any time, authorize Blatt to withdraw money from her checking account.

18. On October 26, 2010, Plaintiff sent Blatt a letter stating in part that "no funds are allowed to be withdrawn from my account on 10-30-10 or any other date…" (Exhibit H, Letter from Plaintiff to Blatt dated October 26, 2010). Said letter was received by Blatt on October 28, 2010 at 8:29am. (Exhibit I, Certified Mail confirmation of delivery).

19. Despite Plaintiff's proscription that Blatt withdraw money from her checking account, on November 1, 2010, Blatt withdrew $881.00 from Plaintiff's PNC Bank checking account. On November 2, 2010, Blatt again withdrew $881.00 from said account, for a total of $1,762.00 in unauthorized withdrawals made by Blatt from Plaintiff's checking account, both of which were returned for "non-sufficient funds". (Exhibit J, Checking Account Statement).

20. Blatt's unauthorized withdrawals caused Plaintiff to have a negative balance, and PNC Bank deducted $25.00 on November 2, 2010 for the check returned on November 1, 2010. PNC also deducted $36.00 on November 3, 2010 for the check returned on November 2, 2010. (Exhibit J, Checking Account Statement).

21. At no time did the Defendants send full verification of the debt to Plaintiff in response to her timely dispute of the alleged debt. At no time did Blatt send Plaintiff a reminder letter stating that $881.00 was scheduled to be withdrawn from her account on November 2, 2010.

22. Notably, the Illinois Appellate Court recently criticized the missteps made by Blatt in its attempts to collect a debt in *Capital One Bank, N.A. v. Czekala*, 379 Ill.App.3d 737, 884 N.E.2d 1205 (2008), and made the following comments as to Blatt's collection practices:

> We are troubled by the errors in this case which are directly attributable to the law firm representing plaintiff. *** Plaintiff's counsel attributed the variations due to the high volume electronic nature of the law firm's practice. **Being too busy to be careful is not a valid excuse** for the procedural difficulties apparent from this record that are attributable to the actions of counsel, not the court.
>
> *Capital One Bank, N.A. v. Czekala*, 379 Ill.App.3d 737, 884 N.E.2d at 1215, (emphasis added).

## **COUNT I-FAIR DEBT COLLECTION PRACTICES ACT-DEFENDANT BLATT**

23. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.

24. Defendant's violations of the FDCPA include, but are not limited to:

 A. Defendant violated § 1692d by attempting to withdraw $1762.00 from Plaintiff's checking account without prior authorization, the natural consequence of which was to oppress, harass, and abuse the Plaintiff;

 B. Defendant violated § 1692e when it deceptively attempted to withdraw $881.00 from Plaintiff's checking account on two separate dates, without prior authorization from the Plaintiff;

 C. Defendant violated § 1692e (2) when it falsely represented the legal status and character of the alleged debt in its collection letter dated October 25, 2010 that it sent to Plaintiff, as said letter implied that the alleged debt was settled when in fact it was not;

 D. Defendant violated § 1692e (5) when Defendant threatened, in its October 25, 2010 collection letter that it sent to Plaintiff, that $881.00 would be deducted from Plaintiff's checking account, as Plaintiff did not authorize said deduction and thus Defendant could not legally make such deduction;

 E. Defendant violated § 1692e (10) when it falsely stated that it would delete, and not use, the banking information that Plaintiff had provided to Defendant during the pendency of a telephone conversation between the parties on October 11, 2010, as Defendant did not delete said information and later used said information to withdraw funds from Plaintiff's account;

 F. Defendant violated § 1692e (10) when it deceptively attempted to withdraw $881.00 from Plaintiff's checking account on two separate dates, without prior authorization from the Plaintiff;

 G. Defendant violated § 1692f when it unfairly attempted to withdraw $881.00 from Plaintiff's checking account on two separate dates, without prior authorization from the Plaintiff;

      H.     Defendant violated § 1692f (1) when it attempted to collect $881.00 from Plaintiff's checking account on two separate dates, without prior authorization from the Plaintiff and thus without being permitted to do so by law;

      I.     Defendant violated § 1692f (2) when it attempted to collect $881.00 from Plaintiff's checking account on November 2, 2010, via check, without giving prior notice to the Plaintiff;

      J.     Defendant violated § 1692g (b) when it failed to provide Plaintiff with the name of the original creditor to which the alleged debt is owed in response to Plaintiff's verification request, and otherwise failed to verify the alleged debt, but continued to collect the alleged debt despite said failure;

25. Plaintiff has been injured by Defendant's actions, and has suffered *inter alia*, extreme emotional distress, financial damages, inability to sleep, feelings of hopelessness, depression, and other injuries as the result of the Defendant's attempts to collect the alleged debt from her. (Exhibit K, Affidavit of Damages).

26. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorney fees.

## **REQUEST FOR RELIEF-FDCPA**

WHEREFORE, Plaintiff requests that judgment be entered in his favor against the Defendants for the count alleged above for:

      A.     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

      B.     Actual damages;

      C.     Costs and reasonable attorney fees pursuant to 15 U.S.C. 1692k(a)(3); and

      D.     Such other or further relief as the Court deems proper.

## COUNT II-CONSUMER FRAUD-DEPARTMENT STORES NATIONAL BANK

27. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.

28. At all relevant times, there was in full force and effect in the State of Illinois a statute commonly known as the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2.

29. Plaintiff is a consumer within the meaning of the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(e)].

30. The collection of debts constitutes services as defined by the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(b)].

31. The collection of debts constitutes trade and commerce as defined by the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(f)].

32. At all times relevant hereto, Blatt was acting on behalf of DSNB and was authorized to collect the alleged debt on behalf of DSNB, at DSNB's direction.

33. A duly authorized agent of DSNB, namely an employee of Blatt who identified himself as "Otis", made material misrepresentations and omissions to Plaintiff during a telephone conversation on October 11, 2010 regarding the settlement of the alleged debt, as follows:

    a) Otis misrepresented that he would delete, and not retain, the banking information provided by Plaintiff;

    b) Otis misrepresented that Blatt would not use the banking information provided by Plaintiff to cause funds to be withdrawn from her account;

c) Otis induced the Plaintiff to believe, by stating that he was only taking the banking information to "set her up" for a future settlement agreement, that settlement negotiations were ongoing when in fact he had at all times intended to withdraw $1762.00 from Plaintiff's PNC checking account;

34. During the pendency of the October 11, 2010 conversation between Plaintiff and Otis, Blatt omitted the material fact that he had scheduled deductions to be made to Plaintiff's checking account, without her authorization, to be made on November 1, 2010 and again on November 2, 2010, as if there was an agreement to do so in existence.

35. During the pendency of a telephone conversation between Mario Kasalo and DSNB's attorney Iryna Martyniv regarding the alleged debt that transpired on October 25, 2010, attorney Martyniv at all times acted as if settlement negotiations for the alleged debt were ongoing and to that end, attorney Martinyv agreed to continue the court hearing set on October 26, 2010, to give DSNB time to consider Plaintiff's offer to settle the debt for $1000.00.

36. Blatt and DSNB's misrepresentations and omissions, detailed above, were communicated to the Plaintiff with the intent that she rely on said misrepresentations and omissions, and Plaintiff reasonably relied on Blatt's, and thus DSNB's, representations that it would not debit her account, and that no settlement agreement had been entered into. In reliance on said misrepresentations and omissions, Plaintiff thereafter hired an attorney to attempt to negotiate a settlement of the alleged debt with with Blatt. Also in reliance on Blatt's representations that settlement negotiations were ongoing, Plaintiff did

not have funds available in her account, on October 31, 2010 and thereafter, to cover the deductions made my Blatt.

37. Plaintiff was damaged by Blatt's, and thus DSNB's, actions and suffered, *inter alia*, financial damages as the result of their attempts to collect said alleged debt, including but not limited to overdraft charges imposed on her checking account. (Exhibit K, Affidavit of Damages).

38. Blatt's conduct on behalf of DSNB is part of a pattern of misconduct which affects consumers and the public interest, and has a potential for repetition and further injury to others. Its actions in relentlessly attempting to collect a debt from Plaintiff via the use of unauthorized withdrawals from her checking account warrant the imposition of punitive damages.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against Defendant Department Stores National Bank, for:

    A.    Actual damages;

    B.    Punitive damages in the amount of $25,000;

    C.    Costs of bringing this action and attorney fees incurred in so doing, pursuant to 815 ILCS 505/10 (c);

    D.    Whatever other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

                                     By: /s/ Mario Kris Kasalo
                                           Mario Kris Kasalo

**The Law Office of M. Kris Kasalo**
**"A Consumer Protection Law Firm"**
111 East Wacker Drive, Suite 555
Chicago, Illinois 60601
tele 773.847.2600
fax 773.847.0330
mario.kasalo@kasalolaw.com